IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Kelly H. Rankin

Civil Action No. 1:17-cv-00726-KHR

ERIKA MICHELLE BENSON,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Kelly H. Rankin

      This action comes before the court pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401, *et seq.*; 1381, *et seq.*, for review of the Commissioner of Social Security's final decision denying Erika Benson's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the consent of the parties, this civil action was referred to the Magistrate Judge pursuant to Title 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.Colo.LCivR 72.2. *See* Docs. 13, 19, 20. The court has carefully considered the Complaint (filed March 22, 2017) (Doc. 1), Plaintiff's Opening Brief (filed June 30, 2017) (Doc. 16), Defendant's Response Brief (filed July 18, 2017) (Doc. 17), Plaintiff's Reply (filed August 3, 2017) (Doc. 18), the entire case file, the administrative record, and applicable case law. For the following reasons, the court REMANDS the Commissioner's decision for further proceedings.

# BACKGROUND

In March 2016, Plaintiff, Erika Benson, applied for DIB and SSI, alleging a disability onset date of May 2, 2015. (*See* Social Security Administrative Record (hereinafter "AR") at 17, 167, 171). Plaintiff alleged that her ability to work was limited by a number of impairments, including pancreatic cancer, lung cancer, degenerative disc disease, and scoliosis. *Id.* at 198. Plaintiff was born on December 28, 1975, and was 39 years old on the date of her alleged disability onset. *Id.* at 167. She completed the 12th grade and has previous work experience as a medical assistant, clinic coordinator, office manager, title clerk, and cashier. *Id.* at 34-37, 199, 456. After her initial application was denied, Plaintiff requested a hearing, which was held on October 31, 2016, before an Administrative Law Judge ("ALJ"). *Id.* at 29-53, 118.

On November 21, 2016, the ALJ issued his decision denying benefits. *Id.* at 12-28. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since May 2, 2015. *Id.* at 17. At step two, the ALJ found that Plaintiff had the following severe impairments: (1) degenerative disc disease status-post discectomy; and (2) failed back syndrome with chronic pain; (3) solitary nodule in the right lung; (4) sleep-related hypoxemia; and (5) pancreatitis. *Id.* The ALJ also concluded that Plaintiff's medically determinable impairments of adjustment disorder and anxiety were not severe. *Id.* at 18. At step three, the ALJ found that Ms. Benson did not have an impairment that met or medically equaled a listed impairment. *Id.* at 19.

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant has the burden of proof in steps one through four whereas the Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with occasional posturals (climbing ramps and stairs, balancing, stooping, kneeling and crouching); however, no crawling or climbing of ladders, ropes, or scaffolds. The claimant should have no exposure to hazards such as unprotected heights and moving mechanical parts; and no concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation.

*Id.* The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the evidence did not support a finding that she was as limited as she claimed. *See id*. at 20-22.

At step four, the ALJ determined that Ms. Benson is capable of performing her past relevant work as an advertising clerk and servicing clerk because those positions do not require the performance of work-related activities precluded by her RFC. *Id.* at 22. Accordingly, Plaintiff's application for benefits was denied. *Id*. at 23-24.

Following the ALJ's decision, Plaintiff requested review by the Appeals Council. *Id*. at 11. The Appeals Council denied her request on January 24, 2017. *Id*. at 1-4. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Ms. Benson filed this action on March 22, 2017. Doc. 1. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff raises numerous arguments on appeal. One of those arguments — the ALJ erred in failing to analyze whether her mental impairments limit her ability to perform basic work activities in the RFC assessment — is sufficient on its own to warrant reversal. Therefore, the

court declines to address the others as they may be impacted on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand."); *see also Brown v. Barnhart*, 182 F. App'x 771, 772 (10th Cir. 2006) (failure to find plaintiff's fibromyalgia severe at step two impacted the subsequent steps in the ALJ's analysis); *Crider v. Barnhart*, 427 F. Supp.2d 999, 1010 (D. Colo. 2006) (declining to address plaintiff's additional contentions where the ALJ erred at step two by failing to address whether plaintiff had fibromyalgia).

On appeal, Ms. Benson contends the ALJ erred in determining her mental impairments were non-severe. Doc. 16 at 19. She further contends that even assuming *arguendo* the ALJ did not err at step two, the ALJ did commit reversible error when he failed to analyze whether these mental impairments limit her ability to perform basic work activities in the RFC assessment. *Id*. In response, the Commissioner seems to argue that the ALJ sufficiently considered the record as a whole and, therefore, any failure to analyze Plaintiff's mental limitations is harmless error. Doc. 17 at 9.

I.      STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is

more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## II.     ANALYSIS

The Commissioner follows a special technique to evaluate the severity of mental impairments and their effect on a claimant's ability to work. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). In applying the special technique, the ALJ must first decide whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Here, the ALJ determined that Ms. Benson had two medically determinable mental impairments: adjustment disorder and anxiety. AR at 18.

The ALJ must next rate the degree of functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). To complete this step, the ALJ uses a five-point scale, rating the degree of limitation in the first three areas as none, mild, moderate, marked or

extreme; and the limitation in the fourth area using a numerical scale of none, one or two, three, or four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The ALJ's degree-of-limitation ratings then inform his conclusions at steps two and three of the five-step analysis. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Here, the ALJ determined: (1) Plaintiff's mental impairments would have "no limitation" on her activities of daily living; (2) Plaintiff's mental impairments would cause her no more than "mild" limitations in her social functioning or concentration, persistence, and pace; (3) and Plaintiff had "no" episodes of decompensation. AR at 18. Under the regulations, the ALJ concluded Ms. Benson's mental impairments were "not severe." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Although Ms. Benson does challenge — in passing — the ALJ's finding of non-severity, her primary argument is that the ALJ failed to properly analyze her mental impairments during the discussion of the RFC assessment. The court agrees with the latter contention.

Residual Functional Capacity ("RFC") is the most a claimant can do in a work setting on a regular and continuing basis despite the limitations imposed by her impairments, both severe and non-severe. SSR 96-8p, 1996 WL 374184, at *1, 5 (S.S.A. July 2, 1996); *see also Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)) (noting "the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not"). The Tenth Circuit has explained that this assessment includes three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). This court's analysis ends at the first phase because the ALJ did not follow the correct legal standard in evaluating Ms. Benson's RFC.

The RFC assessment must address the claimant's remaining nonexertional capacity in terms of work-related functions. SSR 96-8p, 1996 WL 374184, at *5-6. In determining a claimant's capacity for work-related mental activities, the ALJ must consider her abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6. This assessment must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. "However, [an] ALJ's failure to conduct a . . . particularized assessment of mental functions at step four [is] harmless error [when there] is no substantial evidence that would allow a reasonable administrative factfinder to include any mental limitations in [the] RFC." *McKoy v. Colvin*, No. 13-cv-02461, 2015 WL 758450, at *4 (D. Colo. Feb. 23, 2015) (quoting *Alvey v. Colvin*, 536 Fed. App'x 792, 795 (10th Cir. 2013) (unpublished)).

At step two, after discussing the report of Meredith Campbell, Psy.D., the psychological consultative examiner, the ALJ found that Ms. Benson had two mental limitations (adjustment disorder and anxiety) and classified those limitations as non-severe. AR at 18. The ALJ then acknowledged that his analysis of Claimant's mental limitations at step two is abbreviated in comparison to the mental limitations analysis required in the RFC assessment used at steps four and five. *Id.* at 18-19. Despite this, however, the ALJ's subsequent assessment did not discuss the possible limitations resulting from either of the recognized mental impairments, and it did not include any mental limitations in Ms. Benson's RFC. *Id.* at 20-32. The only reference to mental

limitations appears in a brief discussion of Dr. Campbell's opinion assigning Plaintiff a GAF[2] score of 65. *Id.* at 22. The ALJ observed that a GAF score of 65 indicates mild symptoms or difficulty in social, occupational or school functioning. *Id.* But he accorded limited weight to this medical opinion, stating that a GAF score is "only a snapshot opinion . . . of limited value for assessing prognosis or treatment outcome." *Id.*

However, this explanation fails to adequately specify why the ALJ accorded limited weight to Dr. Campbell's opinion as it related to the effect of Plaintiff's anxiety and depression on her ability to work. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (concluding the court could not conduct a meaningful review of the findings when the ALJ failed to explain or identify what the claimed inconsistencies were between the medical opinion and the other substantial evidence in the record). Indeed, the ALJ failed to address Dr. Campbell's conclusion that Plaintiff would have mild limitations understanding, remembering, and carrying out complex instructions. The ALJ also did not address Dr. Campbell's observation that Plaintiff would have limitations interacting with supervisors and coworkers, as well as limitations responding appropriately to usual work situations and changes in a routine work setting. *See* AR at 452-59; *see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). Practically speaking, the ALJ's brief discussion of Plaintiff's GAF score — and its bearing on functional limitations — amounted to no discussion of Plaintiff's mental impairments at all. Thus, the ALJ did not satisfy

---

[2]  The Global Assessment of Functioning (GAF) "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of [social, occupational, and psychological] functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (Text Revision 4th Ed. 2000) ("DSM-IV")).

the requirements of the Commissioner's regulations concerning the evaluation of a claimant's mental limitations in the RFC assessment. *See* SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot be accepted with the medical and other evidence.").

The ALJ's failure to explain why the RFC excludes known mental impairments, interferes with this court's ability to assess whether the ALJ did, in fact, consider all the relevant evidence and all of Ms. Benson's medically determinable impairments. Depriving the court and Plaintiff of the information necessary to determine the legal sufficiency of the ALJ's action is reversible error. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (citation omitted) (noting an ALJ's failure to provide the court with a sufficient basis to determine that the ALJ followed appropriate legal principles is grounds for reversal).

Furthermore, the ALJ's failure to properly consider all mental impairments in the RFC assessment is not harmless error because the record does contain evidence that could support including a mental limitation in Ms. Benson's RFC. Dr. Campbell diagnosed Ms. Benson as having an adjustment disorder with mild anxiety and depression. AR at 459. As previously noted, Dr. Campbell opined that Plaintiff may have difficulty being able to understand, remember, and carry out more complex instructions. And she noted that Plaintiff would have mild limitations having appropriate interactions with the general public, colleagues, and supervisors. *Id*. Further, during her testimony, Ms. Benson had difficulty recalling words, and testified that her medications had affected her memory and her ability to process information. *Id*. at 36, 41. Thus, although the record might support a finding that Ms. Benson's mental impairments do not limit her ability to work, the court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in

any other way." *See Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (unpublished) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

In response, Defendant argues that — even if Plaintiff's mental impairments caused some mild limitations — the ALJ elicited testimony from the vocational expert that there were unskilled jobs in the national economy that Plaintiff could perform. Doc. 17 at 11-12. Defendant suggests, therefore, that remand is unnecessary. *Id.* However, Defendant also concedes that the ALJ did not make any factual findings in this regard. *Id.* at 12. Thus, the court views this argument as little more than a thinly veiled request for this court to reweigh the evidence and make its own finding of fact, which it cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

The ALJ's failure to adequately discuss Ms. Benson's mental impairments in the RFC assessment was not harmless error and, therefore, the court must remand on this basis.

## CONCLUSION

Based on the foregoing reasons, it is ORDERED that the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for further proceedings consistent with this order and judgment.

DATED at Denver, Colorado, this 26th day of March, 2018.

BY THE COURT:

Kelly H. Rankin
United States Magistrate Judge
District of Colorado